UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK GILES, MARCUS JONES, and CRAIG RIDDLE, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 24 C 2996 |
| v. | ) ) | Judge Sara L. Ellis |
| SABERT CORPORATION, | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

When Plaintiffs Frederick Giles, Marcus Jones, and Craig Riddle worked for Defendant Sabert Corporation ("Sabert"), they had to scan their biometric information at the beginning and end of their shifts for timekeeping purposes. Plaintiffs filed this lawsuit, alleging that through the use of this biometric timekeeping system, Sabert violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/15. Now, Sabert moves to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Giles and Riddle cannot establish that their Section 15(a) claims are ripe, the Court dismisses their Section 15(a) claims without prejudice against Sabert. But because Plaintiffs otherwise adequately established subject matter jurisdiction and stated plausible claims, the remaining claims can proceed.

## BACKGROUND[1]

Giles, Jones, and Riddle are each individuals domiciled in Illinois. Sabert is a packaging and food service company with its principal place of business in and organized under the laws of New Jersey. Sabert is also registered with the Illinois Secretary of State and conducts substantial business in Illinois.

Sabert operates a facility on Roosevelt Road in Chicago, Illinois (the "Roosevelt Location"). Plaintiffs all worked at Sabert's Roosevelt Location. When Sabert hired Plaintiffs, Sabert required them to enroll in Sabert's third party biometric system, using a scan of their fingerprint or hand geometry, so that the biometric system could store a template of their fingerprint or hand geometry information in a database with their associated identity information. Sabert required Plaintiffs to scan their fingerprint or hand geometry using a biometric time clock system at the beginning and end of each working shift. The biometric time clock system compared Plaintiffs' scanned biometric information with the template of their information in the database as a means to identify Plaintiffs and track the time they worked.

Plaintiffs never signed a written release allowing Sabert to collect their biometric information. Sabert also did not have a data retention and destruction policy during the time it collected Plaintiffs' biometric information. Sabert shared Plaintiffs' biometric information with at least one third party for purposes of its payroll management services.

Giles worked for Sabert from September 2022 to February 2023. Sabert's biometric time clock system scanned Giles' fingerprint or hand geometry no less than 200 times during the time Giles worked for Sabert.

---

[1] The Court takes the facts from Plaintiffs' complaint and presumes them to be true for the purpose of resolving Sabert's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also includes the facts from the declaration attached to Sabert's motion to dismiss. However, the Court assesses the extent to which it can consider the declaration and exhibits attached thereto in the analysis section below.

Jones worked for Sabert from January 2023 until July 2023. Sabert's biometric time clock system scanned Jones' fingerprint or hand geometry no less than 180 times during the time Jones worked for Sabert.

Riddle worked for Sabert from August 2022 to January 2023. Sabert's biometric time clock system scanned Riddle's fingerprint or hand geometry no less than 170 times during the time Riddle worked for Sabert.

Sabert attached a declaration to its motion to dismiss from its Payroll and Human Resources Information Systems Manager, Donna Assenza. Doc. 25-1 at 1. Assenza attested that before each of Plaintiffs used the biometric time clock system for the first time, writing appeared on the biometric time clocks and solicited consent from each Plaintiff to any "collection, capture, storage, access to, use, possession, dissemination, disclosure, re-disclosure, and hosting of any biometric data" in connection with the biometric time clock system. *Id.* at 2–3. Assenza attested that each Plaintiff provided their consent.

Assenza also attached to her declaration copies of the consent language that she claims each of the Plaintiffs agreed to and the date Plaintiffs gave their consent. *See id.* at 6–10. The language states that:

> I agree to use my employer's timeclock devices with a finger sensor for timekeeping and attendance. I understand that the sensor uses data from my finger scan and creates a template that is securely stored in the sensor and my employer's timekeeping database, during my employment. I understand that finger scans and templates may be considered biometric data. By clicking "Accept" below and completing enrollment, I confirm that I agree to my employer's policy (if applicable) regarding biometric data retention and destruction. Clicking "Accept" is my Consent to the collection, capture, storage, access to, use, possession, dissemination, disclosure, re-disclosure, and hosting of any biometric data by my employer, UKG Inc. (including Kronos), and any subcontractors, consistent with my Consent and my employer's timekeeping policy (if applicable).

*Id.* at 8.

Further, Assenza attested that Giles and Riddle are still currently employed by Sabert. Assenza stated that Jones' last day of work with Sabert was July 1, 2023.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Where, as here, the defendant contests the truth of the jurisdictional allegations—a factual challenge—the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *See id.* at 173; *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444–45 (7th Cir. 2009); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

BIPA "imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 1; *see also* 740 Ill. Comp. Stat. 14/10 ("'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."). Section 15(a) requires private entities in possession of biometric identifiers to: "(1) develop a written, publicly available policy that includes a retention schedule and destruction guidelines and (2) permanently destroy data upon the satisfaction of the 'initial purpose for collecting or obtaining' it or 'within 3 years' of the entity's last interaction with the person, whichever comes first." *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 610 (N.D. Ill. 2020) (quoting 740 Ill. Comp. Stat. 14/15(a)). Section 15(b) requires private entities, before they collect a person's biometric identifier, to inform that individual in writing that the entity is collecting or storing their biometric identifier; the purpose of collecting the biometric identifier; the length of term for which the entity is collecting, storing, and using the biometric identifier; and to receive a written release from the individual. *See* 740 Ill. Comp. Stat. 14/15(b). Section 15(d) states that a private entity may not disclose or otherwise disseminate a person's biometric identifier without their consent, authorization by the person for a financial transaction, legal requirement, or requirement by a warrant. *Id.* at 14/15(d).

Section 20 provides rights of actions and remedies for "persons aggrieved" by violations of Section 15. *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 867 (N.D. Ill. 2022) (quoting *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1148 (7th Cir. 2020)). Under Section 20, negligent violations are punishable by $1,000 or actual damages, whichever is greater, and

intentional or reckless violations are punishable by $5,000 or actual damages, whichever is greater. 740 Ill. Comp. Stat. 14/20(a).

**I.     The Amount in Controversy**

   **A.     Public Act 103-0769**

First, Sabert argues that the Court should dismiss Plaintiffs' complaint for lack of subject matter jurisdiction because Plaintiffs have not met the amount in controversy requirements for diversity jurisdiction. Diversity jurisdiction exists in cases where the amount in controversy exceeds $75,000 and the plaintiffs and defendants are citizens of different states. 28 U.S.C. § 1332(a)(1). The Court assesses the amount in controversy as of the date Plaintiffs filed the case in federal court, in this case April 15, 2024. *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023). "If on the date of filing, the plaintiff[s] could allege in good faith that over $75,000 was at stake, then the amount-in-controversy requirement is satisfied." *Id.* at 206 (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 809 (7th Cir. 2017)). The Court may consider events that occurred after Plaintiffs filed the case if those facts "clarify what the plaintiff[s] w[ere] actually seeking when the case was" filed. *Id.* (quoting *Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011)).

At the time Plaintiffs filed this case, the controlling law concerning the accumulation of damages under Sections 15(b) and 15(d) of BIPA was *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004. In *Cothron*, the Illinois Supreme Court answered the certified question from the Seventh Circuit: "Do section 15(b) and 15(d) claims accrue each time a private entity scans a person's biometric identifier and each time a private entity transmits such a scan to a third party, or only upon the first scan and first transmission?" *Id.* ¶ 1. The *Cothron* court evaluated the language of Section 15 and held that "a separate claim accrues under the Act each time a private

entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d)." *Id.* ¶¶ 1, 22, 28–30. The court reached its conclusion based on the plain language of Sections 15(b) and 15(d), although it did note that its interpretation raised some "policy-based concerns about potentially excessive damages awards." *Id.* ¶¶ 22–43. Further, the court suggested that "the legislature review these policy concerns and make clear its intent regarding the assessment of damages under the Act." *Id.* ¶ 43.

After Plaintiffs filed this case, the Illinois legislature enacted Public Act 103-0769 in August 2024. *See* 740 Ill Comp. Stat. 14/20, *as amended by* SB 2979, Public Act 103-0769. Public Act 103-0769 modified the language of Section 20 of BIPA, which governs damages, to provide that:

> (b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a *single violation* of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, *one recovery* under this Section.
>
> (c) For purposes of subsection (d) of Section 15, a private entity that, in more than one instance, discloses, rediscloses, or otherwise disseminates the same biometric identifier or biometric information from the same person to the same recipient using the same method of collection in violation of subsection (d) of Section 15 has committed a *single violation* of subsection (d) of Section 15 for which the aggrieved person is entitled to, at most, *one recovery* under this Section regardless of the number of times the private entity disclosed, redisclosed, or otherwise disseminated the same biometric identifier or biometric information of the same person to the same recipient.

740 Ill. Comp. Stat. 14/20(b)–(c) (emphasis added).

For this case, the pertinent question is whether Public Act 103-0769 applies retroactively such that it clarified the meaning of BIPA and such clarification means that Plaintiffs did not

meet the amount in controversy requirement at the time they filed their claims. Under Illinois law, a presumption exists that statutory amendments are "intended to change existing law," not clarify the existing law's meaning. *K. Miller Constr. Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010). A party may overcome this presumption if the circumstances surrounding the amendment show that the amendment was "intended only to interpret the original act." *Id.* (citation omitted). To determine whether a statutory amendment is a change or clarification of existing law, courts look to "whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." *Id.* (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663–64 (7th Cir. 2009)).

Two courts in this district have addressed whether Public Act 103-0769 applies retroactively to claims filed by plaintiffs before Public Act 103-0769 went into effect. First, in *Gregg v. Central Transport LLC*, a court found that the circumstances surrounding Public Act 103-0769 support that it applies retroactively. --- F. Supp. 3d ----, 2024 WL 4766297, at *2–4 (N.D. Ill. Nov. 13, 2024). The court reasoned that the language in *Cothron* inviting the legislature to "make clear its intent regarding the assessment of damages under" BIPA indicates that the Illinois Supreme Court found BIPA's language ambiguous, with Public Act 103-0769 clarifying that ambiguity. *Id.* at *3. A different court reached the opposite conclusion in *Schwartz v. Supply Network, Inc.*, No. 23 CV 14319, 2024 WL 4871408, at *2–5 (N.D. Ill. Nov. 22, 2024). The *Schwartz* court concluded that the Illinois Supreme Court in *Cothron* reasoned that BIPA was unambiguous, with the language of Public Act 103-0769 supporting that it effected a change, not a clarification, in the law. *Id.* at *2. Further, the *Schwartz* court rejected

8

the argument that *Cothron*'s statement that the legislature could "make clear" its intent regarding BIPA's damages meant that any future action by the legislature concerning BIPA damages would amount to a clarification and not a change in the law. *Id.* at *3. This Court agrees with *Schwartz* and the reasoning contained therein, and so adopts its analysis here. *See id.* at *2–5. Because Public Act 103-0769 does not apply retroactively and each Plaintiff in this case alleges more than 150 scans occurred, at the time of filing, Plaintiffs reasonably believed that the case met the amount in controversy requirement. Therefore, Sabert's challenge to the amount in controversy requirement based on Public Act 103-0769 fails. *Id.* at *5.

### B. Plaintiffs' Consent and Amount in Controversy

Sabert also argues that the documents attached to its motion to dismiss show that, at the time that Plaintiffs filed this case, the Court lacked subject matter jurisdiction because Plaintiffs signed consents that would eliminate their Section 15(b) and 15(d) claims and therefore their claims never met the amount in controversy requirement. The Court finds that the Assenza declaration and materials attached thereto do not defeat this Court's subject matter jurisdiction. The Court can consider the Assenza declaration as part of Sabert's factual challenge to subject matter jurisdiction, and it is Plaintiffs' burden to establish the amount in controversy by a preponderance of the evidence. *See Silha*, 807 F.3d at 173.

Plaintiffs argue that they have established the amount in controversy by a preponderance of the evidence because, even if Plaintiffs did sign the consents attached to the Assenza declaration, the language of the consents do not cover their Section 15(b) claims. Plaintiffs argue that the consent language did not meet Section 15(b)'s requirements because the language does not inform them of the specific purpose of the collection and the length of term for which Sabert would store or use their biometric identifiers. The Court agrees with Plaintiffs, in part.

9

Even if the Court accepts Sabert's assertions that each Plaintiff signed the consents, the language of the consents says nothing about the length of time that Sabert will retain and use Plaintiffs' biometric identifiers. However, the language does inform the signee of the purpose of the collection, use, and storage of the biometric identifiers, namely for timekeeping and attendance purposes with the employer's timeclock devices. Because the consents do not specify the length of time and Plaintiffs each assert over 150 violations of Section 15(b), the Court finds they have satisfied their burden to establish the amount in controversy by a preponderance of the evidence.

In sum, the Court finds Plaintiffs have satisfactorily established that the amount in controversy for this case is above $75,000. The Court denies Sabert's motion to dismiss Plaintiffs' Section 15(b) and 15(d) claims for lack of subject matter jurisdiction.

## II. Rule 12(b)(6) and Plaintiffs' Consent

Further, under Federal Rule of Civil Procedure 12(b)(6), Sabert moves to dismiss Plaintiffs' Section 15(b) and 15(d) claims, contending that its evidence proves Plaintiffs consented to the collection, storage, and dissemination of their biometric identifiers such that they cannot state a claim. Plaintiffs respond that the Court should not consider the Assenza declaration, and the exhibits attached thereto, because Plaintiffs did not reference any consent document in their complaint and, even if the Court did consider them, the language of the consents attached to the Assenza declaration do not foreclose their Section 15(b) claims.

For purposes of a motion to dismiss under Rule 12(b)(6), the Court may only consider documents attached to a motion to dismiss if the documents are "referred to in the plaintiff's complaint and are central to his claim." *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 617 (N.D. Ill. 2023) (quoting *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018)). In *Newbern v. Customized Distribution Services, Inc.*, a court faced similar

10

factual circumstances to those present in this case. No. 23-cv-3871, 2024 WL 3488192 (S.D. Ill. June 20, 2024). The plaintiff alleged that the defendant had violated Sections 15(b) and (d) by failing to provide the plaintiff with notice that the defendant was collecting and storing his biometric identifiers and that the defendant disseminated the plaintiff's biometric identifiers "without consent." *Id.* at *1. The defendant moved to dismiss the plaintiff's claims and attached a declaration from its Vice President of Human Resources, attesting that the plaintiff had received and signed a "Notice of Biometric Data Collection" and "Biometric Information Privacy Employee Form." *Id.* That declaration attached copies of those signed forms. Decl. of Ben Mera, *Newbern v. Customized Distrib. Servs., Inc.*, No. 23-cv-3871, Doc. 29-1 (S.D. Ill. Mar. 29, 2024). The court found that it could not consider the declaration and materials attached thereto in resolving the motion to dismiss because the plaintiff's complaint did not refer to the consent materials included in the declaration and the consent materials were not central to the plaintiff's claims. *Newbern*, 2024 WL 3488192, at *1.

  The Court finds that the same result is appropriate here. In the complaint, Plaintiffs assert that "Plaintiffs never signed a written release allowing Defendant to collect, capture, or otherwise obtain their biometric information." Doc. 1 ¶ 29. Plaintiffs also allege in other ways that they did not consent to Sabert's collection, storage, or dissemination of their biometric identifiers. *See id.* ¶¶ 53–56, 67–68, 72–74. Plaintiffs do not refer to the existence of any consent document. Further, the alleged consents do not appear to be central to Plaintiffs' claims, rather they are central to Sabert's defenses. *See Newbern*, 2024 WL 3488192, at *1. To consider Assenza's declaration and the documents attached thereto would convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

11

The Court wishes to provide both parties with adequate opportunity to factually respond to the declaration and the exhibits attached thereto. Sabert can raise the declaration in a motion for summary judgment and the Court will consider the legal significance of the declaration at that time. *See Sims v. Midway Broad. Co.*, No. 22-cv-03743, 2023 WL 6795702, at *2–3 (N.D. Ill. Oct. 13, 2023) (finding it was appropriate to defer evidence that could not be considered at the motion to dismiss phase until the defendant filed a motion for summary judgment, so the parties could factually and legally develop their positions with the benefit of discovery). The Court denies Sabert's motion to dismiss Plaintiffs' Section 15(b) and 15(d) claims under Federal Rule of Civil Procedure 12(b)(6).

### III. Standing for and Ripeness of Section 15(a) Claims

Next, Sabert argues that the Court should dismiss Plaintiffs' Section 15(a) claims pursuant to Federal Rule of Civil Procedure 12(b)(1) as Plaintiffs lack standing and their claims are not yet ripe. Specifically, Sabert argues Plaintiffs lack standing to bring Section 15(a) claims because they have not alleged a particularized harm from Sabert's alleged lack of retention policy, and their claims are not ripe because Giles and Riddle still work for Sabert and Jones' employment with Sabert ended less than a year ago. Plaintiffs dispute this and argue that they suffered particularized harms when Sabert collected and retained their biometric identifiers without having a compliant written data retention policy, and failed to adhere to such a policy. Plaintiffs also argue that their claims are ripe as Section 15(a)'s duties attach to a private entity as soon as it possesses biometric information.

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521

12

U.S. 811, 818 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). Ripeness is another doctrine that implicates the Court's case or controversy requirement. *See Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019) ("The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems."). When assessing if a claim is ripe, "courts focus on (1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" *Finch v. Treto*, 606 F. Supp. 3d 811, 843 (N.D. Ill. 2022) (quoting *Metro. Milwaukee Ass'n of Com. v. Milwaukee Cnty.*, 325 F.3d 879, 882 (7th Cir. 2003)). As issues of standing and ripeness go to this Court's subject matter jurisdiction, the Court may consider evidence outside of the complaint when resolving these issues. *See Silha*, 807 F.3d at 173.

Section 15(a) creates two general requirements for private entities in possession of biometric identifiers: (1) to develop and publish a written policy regarding retention and destruction of biometric identifiers, in accordance with certain requirements for those policies contained in Section 15(a); and (2) to comply with those retention and destruction policies. *See Davis v. e.l.f. Cosms., Inc.*, No. 22 C 5069, 2024 WL 2722663, at *6 (N.D. Ill. May 28, 2024). Stemming from the Seventh Circuit's *Bryant* and *Fox* cases, courts in this circuit have generally found that claims alleging a failure to publish a biometric identifier policy are not sufficient for

13

standing because private entities owe the duty to develop and publish a biometric identifier policy to the public, not particular persons. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) ("[T]he duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects."); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1148 (7th Cir. 2020) (explaining that *Bryant* held that a plaintiff lacked standing to bring a claim based on a "defendant's failure to publicly disclose a data-retention policy"); *Sloat v. Camfil USA, Inc.*, No. 23 C 5125, 2024 WL 1556268, at *2 (N.D. Ill. Apr. 10, 2024) (finding that a claim that a plaintiff lacked standing to bring a claim that the defendant failed to publish a retention schedule regarding biometric information based on *Bryant*). However, if a plaintiff alleges that the private entity failed to develop and comply with their biometric identifier policy, or the requirements for what such a policy would contain if they had a policy, courts have found that the plaintiff has standing for the Section 15(a) claim. *See Fox*, 980 F.3d at 1149 (finding that a plaintiff had standing where they alleged their former employer violated "the duties to develop, publicly disclose, *and comply with* data retention and destruction policies—resulting in the wrongful retention of her biometric data after her employment ended, beyond the time authorized by law"); *Taylor v. 48forty Sols., LLC*, No. 23 C 14400, 2024 WL 1530383, at *4 (N.D. Ill. Apr. 9, 2024) (similar).

Only Jones possesses both standing and a ripe claim. A careful review of Plaintiffs' complaint shows that they allege that Sabert both failed to create an adequate biometric identifier policy and adhere to such a policy. *See* Doc. 1 ¶¶ 37, 39–40, 46. This is adequate to establish standing. *See Davis*, 2024 WL 2722663, at *7 (examining the complaint to assess whether a plaintiff's allegations were sufficient to confer standing). As for ripeness, Plaintiffs have each adequately alleged a ripe claim that Sabert collected their biometric identifiers without

14

developing an adequate policy for the retention or destruction of their biometric identifiers. *See Fox*, 980 F.3d at 1154–55; *Taylor*, 2024 WL 1530383, at *4. However, even if a plaintiff's "claim for failure to develop and disclose a retention policy is ripe, [p]laintiff does not have standing to pursue such a claim in federal court without also adequately contending that [d]efendant unlawfully retained his biometric information." *Taylor*, 2024 WL 1530383, at *4 (citing *Fox*, 980 F.3d at 1154–55). Jones' claim for unlawful retention is ripe because the purpose for which Sabert collected Plaintiffs' biometric identifiers—timekeeping and attendance on its biometric timeclock system—ended when Jones ceased working for Sabert, and Sabert has allegedly failed to destroy Jones' biometric identifiers. *See Sloat*, 2024 WL 1556268, at *3 ("Sloat alleges that Camfil unlawfully retained his biometric information and failed to destroy it even after the 'initial purpose' for obtaining that information—'timekeeping and payroll'—had been accomplished due to his departure from the company. These allegations are sufficient to establish injury-in-fact." (internal citation omitted)). Although Giles and Riddle allege in the complaint that they ceased working for Sabert in 2023, Giles' and Riddle's unlawful retention claims are not ripe because they do not dispute Assenza's declaration stating that they still work for Sabert and have not presented any evidence to support that Sabert no longer uses their biometric identifiers for timekeeping and attendance. *See Silha*, 807 F.3d at 173 (explaining that courts may consider documents outside the pleadings when resolving a factual challenge to subject matter jurisdiction). Because Giles' and Riddle's unlawful retention claims are not ripe, they cannot pursue their claim that Sabert failed to develop and publish a biometric policy as lacks standing, even if it would be ripe. *See Taylor*, 2024 WL 1530383, at *4. The Court grants Sabert's motion to dismiss Giles' and Riddle's Section 15(a) claims for a lack of subject matter jurisdiction but denies the motion as to Jones.

## IV.     Doctrine of Laches

Next, Sabert argues that the doctrine of laches bars Plaintiffs' claims because Plaintiffs gave their written consent to the collection of their biometric identifiers and are now, two years later, saying Sabert harmed them with the collection of their biometric identifiers. The doctrine of laches is an affirmative defense, which derives from the maxim "those who sleep on their rights, lose them." *Schwartz*, 2024 WL 1932919, at *3 (quoting *Chattanoga Mfg. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002)). Because a plaintiff need not anticipate or overcome affirmative defenses in the complaint, the Court should only dismiss a claim under Rule 12(b)(6) due to an affirmative defense where "the plaintiff pleads himself out of court by disclosing the basis [for the affirmative defense] in his complaint." *Sloat*, 2024 WL 1556268, at *5 (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006)).

The doctrine of laches "bars an action when the plaintiff's delay in filing the claim (1) is unreasonable and inexcusable, and (2) materially prejudices the defendant." *Smith v. Caterpillar*, Inc., 338 F.3d 730, 733 (7th Cir. 2003)). To support its laches argument, Sabert cites to *Arguenta v. Proven Partners Group, LLP*, an unreported decision from the Sixteenth Judicial Circuit Court in Kane County, Illinois. No. 2023 CH 38 (Ill. Cir. Ct. Oct. 25, 2023); Doc. 25-1 at 19–29. The court in *Arguenta* dismissed a BIPA claim on laches grounds because the plaintiff had signed a consent form early in her employment with the defendant. *See* Doc. 25-1 at 19–29. Sabert argues that *Arguenta* shows that this Court should similarly dismiss Plaintiffs' claims as they signed consent forms early in their employment with Sabert. However, at this time, the Court cannot accept Sabert's argument as the Court cannot consider the Assenza declaration as part of resolving Sabert's Rule 12(b)(6) motion to dismiss. As discussed above,

16

Plaintiffs do not refer to the Assenza declaration and consents attached thereto in the complaint and the consents are not central to their claims. *See Newbern*, 2024 WL 3488192, at *1. Because the Court cannot consider Sabert's evidence, it is limited to the substance of the complaint and Plaintiffs' complaint does not plead facts that suggest that they unreasonably delayed bringing their claims. Plaintiffs filed their claims well within BIPA's statute of limitations. *See Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 42 (holding that a five-year limitations period applies to BIPA claims). Further, based on the allegations in the complaint, they only left employment with Sabert within the last two years. *See Sloat*, 2024 WL 1556268, at *5 (finding that an employee's actions did not appear to be unreasonable for laches purposes when he filed his claim less than three years after terminating his employment with the defendant). While Sabert may be able to sustain its laches defense at the summary judgment stage when the Court can consider the consents, the Court denies Sabert's motion to dismiss based on laches at this time. *See Schwartz*, 2024 WL 1932919, at *4 ("Because unreasonable delay is not apparent from the face of the complaint, the Court denies [defendant's] motion to dismiss based on laches.").

**V.     Plaintiffs' Claims for Statutory Damages**

Lastly, Sabert moves to strike or dismiss Plaintiffs' claims for statutory damages because Plaintiffs failed to allege that Sabert's conduct was negligent, reckless, or intentional. BIPA provides that a plaintiff may recover statutory damages of $1,000 for negligent violations and $5,000 for intentional or reckless violations. *See* 740 Ill. Comp. Stat. 14/20(1)–(2). "Courts in this District have reached conflicting outcomes as to whether a complaint must set forth detailed allegations regarding a defendant's state of mind to state a claim under BIPA." *Sloat*, 2024 WL 1556268, at *4; *Schwartz*, 2024 WL 1932919, at *4 (same). The majority of courts have found

17

that the damages categories in Section 20 of BIPA are types of relief that do not require the plaintiff to plead facts to support scienter. *See, e.g.*, *Sloat*, 2024 WL 1556268, at *5; *Sosa*, 600 F. Supp. 3d at 874 ("Sosa need not plead facts (such as facts plausibly suggesting negligence, recklessness, or intentional conduct) that show his entitlement to these precise forms of relief."). The minority of courts have held that plaintiffs must allege facts regarding scienter. *See, e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) ("Rogers' conclusory statement of CSX's intent is insufficient to allow us to infer that CSX acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15."); *Namuwonge v. Kronos, Inc.*, No. 1:19-cv-03239, 2019 WL 6253807, at *5 (N.D. Ill. Nov. 22, 2019) ("Namuwonge's abstract statements regarding damages are insufficient for the Court to infer that Kronos acted recklessly or intentionally.").

This Court agrees with the majority. Federal Rule of Civil Procedure 8 does not require a plaintiff to plead damages with particularity, rather it only requires "demand for relief sought." Fed. R. Civ. P. 8(a)(3). Based on the language of Section 20, whether a plaintiff adequately demonstrates negligence, intentional action, or recklessness impacts a plaintiff's recovery, not the underlying BIPA violation. *See Rosenbach*, 2019 IL 123186, ¶ 33 ("[W]hen a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach. . . . The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action."); *see also Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL 595707, at *5 (N.D. Ill. Feb. 28, 2022) ("[A]llegations of scienter or no, [the] complaint states a plausible claim for relief under sections 15(b) and

18

15(d); Rule 12(b)(6) does not require her to plead the facts that will determine the amount of actual damages she may be entitled to recover." (second alteration in original) (quoting *Cothron*, 467 F. Supp. 3d at 615)).

Further, even if scienter was an element of BIPA, Plaintiffs have adequately alleged such scienter through their allegations that Sabert made no effort to comply with BIPA. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible."). The Court denies Sabert's motion to dismiss or strike the Plaintiffs' requests for statutory damages.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Sabert's motion to dismiss [25]. The Court dismisses Giles' and Riddle's Section 15(a) claims (Count I) without prejudice.

Dated: January 21, 2025

_____
SARA L. ELLIS
United States District Judge

19